Next case for argument, case number 24-2438 from the Northern District of Iowa, United States v. Edwin Diaz. Mr. Weir. It pleases the court. Counsel. Joshua Weir appearing on behalf of the appellant, Edwin Diaz. The appellant has raised two separate challenges in this case from two separate law enforcement encounters that took place four days apart. I'm going to start with the first law enforcement encounter that took place on December 31st of 2002. It's the appellant's contention that the deputy involved in this case did not have probable cause to seize him. Judge Strand at the district court level determined that when the alert, the emergency lights were activated, and then when he approached the vehicle and at one point he had his hand on his firearm, that at that point the defendant, now appellant, was seized. So the question for this court is whether or not at that moment the deputy involved had probable cause. So what we have is the deputy had been driven on a parallel street. He noticed appellant's vehicle. It had a headlight out. And then he turned around. Problem of cause or reasonable suspicion? Either one, Your Honor. Either probable cause or reasonable articulable suspicion. Did he have reasonable suspicion to, well, actually he didn't initiate a stop. It was parked.  It was parked. And he treated it as stopped. And that's part of our case. He exited his patrol car and approached. Correct. Like a police officer stopping a pedestrian on a sidewalk. And that's our first contention is Judge Strand found that one of the violations that appellant had done was that he didn't have. It doesn't have to be a violation to do that. Well, it does for a seizure. Because he was seized immediately. It wasn't a community caretaker. It was stopped. Well, what was the seizure immediately? The seizure took place when. . . The red and blue lights. The red and blue lights. And then when he was approaching and he had his hand on his service revolver. And Judge Strand found that those two factors together amounted to a seizure at that moment. Judge Strand walked through this court's history of. . . Yeah, I know. . . . waved back lights, that type of thing. But there was a seizure. So at that point there had to be probable cause or a reason. . . There was the equivalent of a traffic stop. Even though the vehicle was stopped. Well, that's part of it is it's equivalent except the vehicle had not been operated. Because then we wouldn't have an argument. Had it been a traffic stop and the deputy observed the traffic lights out or damaged headlights. . . Then he definitely would have had a reason to stop. But because the vehicle was already parked. . . The fact that it's missing a headlight or it's got damaged taillights. . . That's not a violation of law. So if the vehicle is already parked. . . Wait a minute. I would say it's sufficient to approach and find out. . . Whether the apparent defects that would cause the car to be in violation of traffic laws. . . If it were moving. So then essentially what you're talking about is a community caretaker to check on the occupants. No, it's more than that. Okay. It's again a pedestrian on a sidewalk. And a police officer sees something that causes him to wonder what's going on. And he approaches and he says, can I talk to you? And the Supreme Court's made it clear for decades. That's fine. But if the person says, no, I don't want to talk to you. . . Absent more. . . Has to back off. Well, the finding from Judge Strand was that he was seized. . . Before there was any conversation between law enforcement and the police. I'm not talking about conversation. I'm talking about the approach. He's approaching the vehicle. Because he thinks if it moves, it's violating the law. And it's parked in a way that looks like it might. . . I have reason to wonder if there's an impaired person behind the wheel. Ultimately, if this Court determines that there was reasonable articulable suspicion based on those facts, then the rest of the law enforcement encounter is good. It's our contention that he didn't have a reasonable articulable suspicion or probable cause for this seizure. He had to quit when he saw it was a man and not a woman. That's still an issue. If that was the . . . If part of the . . . If the reason for the suspicion was strengthened by the fact that the register owner did not . . . The violent may not have a valid license. That kind of nails it for approaching. Correct. Okay. If that's . . . When he sees that's not true, is that the end of the suspicion? And if it's not, then, yeah, we carry on with what follows. Well, the facts of this case are once the officer got up to the vehicle, then he says that he smelled the odor of marijuana. That's your client's . . . That's the bad fact for your client. That's the bad fact. And if it's our contention and Judge Strand found that he felt that either the vehicle had been recently operated or was about to be operated, and I don't think that the facts support that, I think it was just a parked vehicle. But I'm not sure it has to be either. Well, that's what Judge Strand found, and that, I believe, was an error because a parked vehicle . . . If he approaches the person who, if it was the registered owner, would be unlicensed, and he sees it's not the registered owner, and he sees the car is in a condition that it can't be operated, but there's somebody sitting behind the driver. Now, it seems to me reasonable, a reasonable police officer would say, I want to make sure that the person that looks like he or she is going to drive off is licensed. And then the bad fact kicks in. And I think you and I . . . That, to me, is the rub here. Let me ask this. If there was reasonable suspicion based on the improper parking of the vehicle or the defective headlight, what difference does it make whether there was a seizure? It's our contention that that reasonable articular suspicion has to occur before the seizure. Otherwise, that seizure is unlawful. And I don't believe that a vehicle that is parked on the street with a headlight out, that that's a violation of Iowa law. The only other one is if it was parked improper, and that would have to be 18 inches off the curb, and it was a snow-packed curb, and there was no way of seeing whether it was within 18 inches. So, it's our contention that there was no reasonable articular suspicion for the seizure, and then, obviously, the bad facts come out later. But let me get . . . I've got 45 more seconds before I've saved the balance of my time. The second law enforcement encounter was four days later, and there was a search warrant that was issued, and Judge Strand ultimately determined that there was not probable cause. The issue in this case is probable cause was not found because there was no nexus between the appellant's conduct, which was essentially like a kidnapping-type offense where he picked up a girl, and he told her, you're not going to cooperate with law enforcement, essentially, and then they tied that back to do a search of his residence. And there was nothing in the law enforcement affidavit tying that conduct to his house. Now, they included the arrest that took place on December 31st, plus the conduct on January 4th, and they tied those two together and went back and did a search of his house. It's our contention that the Leon good faith exception doesn't apply because there was no nexus whatsoever. There's really only one case recently in front of this Court that came out, and that was the Ralston case. Now, I concede that there were two bad facts in the Ralston case, the fact that they didn't establish the criminal activity of Ralston himself. They did a lot of time identifying the criminal activity of the neighbor, and then also they didn't tie it to his house. So in this case, you have an individual who was caught on December 31st with about 50 grams of methamphetamine, and the officer stated that in her experience, that is a dealer amount. That doesn't mean that he was engaging in this course of conduct over time. In fact, at that time, as shown on the search warrant, he was only charged with possession. Then four days later, he has this incident with essentially a witness, and none of that ties, there's not a continuous course of conduct, continuous drug dealing that ties him to his house. So the judge found, Judge Strand found that there was not probable cause, but then when it came to proving the third element or the third factor in Leon, he felt that that was not met. And I'll save the balance of my time. Thank you. Thank you. Mr. Whady. May it please the Court, Counsel, Sean Whady on behalf of the United States, more particularly the Northern District of Iowa, in this case. It's our position that the District Court do not err in the denial of the motion to suppress, both as to the approach and stop of the vehicle on December 31st of 2022 in the midnight hours, and then also on the application and execution of a search warrant at the defendant's residence approximately four to five days later. I guess it's more like five after an incident about four days later was being investigated regarding a false imprisonment. And extortion, which was connected to the December 31st incident. In the first case, I think I concur with some of the Court's comments in that the initial impetus for the car being approached is that he saw a vehicle parked haphazardly. Probably didn't know it was more significantly haphazardly from the rear if you look at the video or the video stills. And it's ajar, but it appears to be ajar. It appears to have a headlight. It has a headlight on, headlight's off. Appears to be in operation of some form, at least the electronics. He sees that there's two people in the car, turns around. It's also midnight, it's New Year's Eve-ish, and it is below zero. He approaches the vehicle, but before that he saw two broken taillights. All three are violations. Parking violation, the citations are in both the District Court order and a footnote in our brief. Headlight, not operable. Taillights, not operable. And illegal parking. He does, as the District Court notes, he does put a hand on a particular weapon with the red and blue lights on. But there's no evidence, first of all, that the defendant saw that. The Court makes a big if that the defendant saw that that would be considered a factor, and therefore the Court assumed that and then said that that's a seizure. But said that doesn't stop the analysis. Was there PC to approach because of the law violations? And the Court found yes, and we submit that yes because the officer observed all those, not getting around the fact that it was kind of a welfare check at initial glance. And then you get the bad facts, the odor of marijuana. It's New Year's Eve, right? Yeah. Things happen on New Year's Eve. Things do. Things do. And you get the bad facts. There's a series of bad facts. Odor, denial, then admission or tossing of the bag and then admission that, you know, I'll show you where the marijuana is. All that gets them into the car, and there's no, I guess, allegation even at any level that it was improper for him at that stage to have them exit the vehicle. There was some corroboration that the vehicle had recently moved there because of the tracks. There was corroboration that there was some damage to the vehicle because even said by the defendant when the officer gets up there is that, you know, it alleges that it was towed there and it had trouble with the car. All those kind of corroborate the officer's initial observations of something wrong with the vehicle or something's up in regards to concern for the occupants of that vehicle. And then once he seizes the marijuana, there we are. Turning to the second part. I think the resonance one is more difficult. I think this is more difficult for you. The second part. I would agree. The deputy, the facts of the second incident close in time involving two of the same parties from the first incident, Ms. Breen, who was also in the car on December 31st with Mr. Diaz, a little more dramatic in that she was found early morning hours again, hiding out in a convenience store outside before it opened, and then when it opened, acting scared, initial reports. She starts talking about the incident and what had happened to her with regard to Mr. Diaz and his girlfriend and her concerns. That information gets passed on to the detective. The detective corroborates the December 31st incident. These are two different adjacent counties, two different deputies. Claussen on the first stop in Ida County and Stang in regards to the investigation in Sac County. She then re-interviews the victim, Ms. Breen, and corroborates certain facts of that with regard to her own investigation. She lays out quite a bit of detail in the search warrant affidavit, particularly about Mr. Diaz, which kind of distinguishes the case from Ralston and some of that progeny, in that it's specific about the defendant. And she does tie the defendant, Mr. Diaz, and his girlfriend, and that vehicle, having been seen, them operating it, and at that residence. Then she writes up the search warrant trying to search for both evidence of the false imprisonment and the extortion, which I think is a stronger probable cause basis than there is for the drugs, and then also for drugs, drug paraphernalia, and such, because one of the things specifically sought for was handcuffs because handcuffs have been clicked in the alleged report from the victim, and recording devices, the phone, which also would be presumably with someone. In contraband of that nature, both from the false imprisonment, extortion investigation or actions by the defendant, it is reasonable for an officer to believe that that would be at the house of the alleged perpetrator. We submit that the evidence of the drugs would also be evidence, and this court's found in many cases that it's reasonable for an officer to assume, and the court or the magistrate to assume, that there would be contraband found at the particular person's residence. She detailed that he had prior history with drugs as recently as 2019 on convictions and as recently in 2022 of parole violations for drug use. And then all of that ties into five days before, and I know the defense makes a staleness argument, but case the defense cites is, you know, a six-month case, and this is a five-day case as far as most recent behavior in drug quantity, drug distribution quantity possession of 50 grams of methamphetamine. We submit that when you get to the denial by the district court, magistrate court thought it was a close call, found there was probable cause, district court disagreed with that, found that there was not probable cause on the nexus side, not the other parts, not staleness and others, but then found that there wasn't a sufficient nexus, but that didn't stop the analysis. And then we get to Leon, and we get to the fact that the court went through and said that the four factors that show unreasonableness of the reliance by the officer just aren't present here. It's a fairly detailed affidavit. It's specific to the defendant. It's specific to drugs, and it's specific to false imprisonment extortion type allegations and what they're looking for. And it was enough detail to tie the case into a reasonable reliance by that officer. There was certainly not an unreasonable reliance on it. The magistrate didn't totally disavow their role in the process. There's nothing patently false in regards to the affidavit itself. But what is present, according to the district court, is that there was, and the magistrate court noted it as well, there were some omissions. And when you look at good faith, as this court's authority allows, you can look at the officer's knowledge of an information that is presented to the federal magistrate court and the district court as to what was in the head of the officer. And she had two things that were cited in particular. One, she had Facebook messages that had been shown to her by Ms. Breen that showed and corroborated Mr. Diaz asking Ms. Breen to take responsibility for the drugs that they both were in the car with on December 31st. In addition, she had information that she had been investigating Mr. Diaz for drug trafficking and actually made a controlled buy and done surveillance operations. That's where she found the use of the vehicle and his residence, and she had made an actual controlled buy in which he was involved from the defendant, which she did not put in the search warrant affidavit. She attested to the fact before the court that she was trying to protect the CI and protect her investigation. But she had that information, and that was omitted. But when you rely on that as well, when you look at that through her lens, she had a reasonable reliance on a decision by the magistrate and the state court situation to approve the search warrant, and then they turned around. I know this is hindsight or after the fact. They found the very things that they were looking for, handcuffs, the note in the notebook, and the phone that had the recording device that was utilized in that particular case. One of the things that we argued before the magistrate court and then the district court did not, it went the different way on the probable causes. I submit that there was sufficient evidence to get into that residence with the false imprisonment extortion angle almost alone, and then when they get there they're going to notice contraband, drugs. There was no reference any prior about guns and ammunition, but he's a felon and they find guns and ammunition in the residence. So I believe that there is another angle by which to get through, but I think the stronger argument, although the weaker of the two issues before this court, is the good faith argument. We do believe there was a good, solid, good faith reliance, no unreasonable actions by the belief of the officer, but there is the alternative that the PC from the false imprisonment extortion would have ended up getting the officer into the house and then finding the drugs and the guns. Thank you. Appreciate it. Thank you. For Ramon? My esteemed counsel pointed to a part of the record where it got into the head of the officer, and that's at page 8 of the magistrate's report and recommendation, and that's where Deputy Stang omitted from the affidavit that she had been investigating Diaz for drug trafficking for three months, during which surveillance was conducted at the target residence. This is a savvy officer. She knows what she's doing. She knows that she needs to establish a nexus between that residence and the activities of Mr. Diaz, and the fact that she omits it from her affidavit means that she didn't have it, and that in and of itself is a complete lack of indicia of probable cause. Didn't have what? The fact that she'd been investigating? She didn't establish a nexus between any activity going on at that house and the defendant. But our review includes what she knew and didn't tell. Correct. One omission is the flaw in the affidavit. Correct. Thank you, and on that I'll submit. Have a nice day. Well, the case has been well briefed and argued. Mr. Wadey, did I see a reference that you're departing us for the future? This is your last Eighth Circuit argument? Probably is. Well, we go back many years, and you've done a fine job. You've asked me several very specific questions, and I can still remember. Thank you.